# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MARTICE D. SPEARS,

     Petitioner,

v.                                                    Case No. 8:20-cv-3011-KKM-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

## ORDER

Spears, a Florida inmate, timely[1] filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his state court conviction based on an alleged error of the trial court and alleged failings of his trial counsel. (Doc. 1.) Having considered the petition, (*id.*), the supporting memorandum, (Doc. 2), and the response in opposition,

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). The state appellate court affirmed Spears's conviction and sentence on August 26, 2016. (Doc. 13-2, Ex. 6.) His judgment became final 90 days later, on November 25, 2016, when the time to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). Before that date, on November 21, 2016, Spears filed his petition alleging ineffective assistance of appellate counsel on November 21, 2016. (Doc. 13-2, Ex. 9.) That petition remained pending until the state appellate court denied it on February 24, 2017. (Doc. 13-2, Ex. 10.) Before that date, Spears filed his postconviction motion on February 20, 2017. (Doc. 13-2, Ex. 11.) The postconviction motion remained pending until the state appellate court's mandate issued on September 22, 2020. (Doc. 13-2, Ex. 38.) Spears filed his § 2254 petition 83 days later, on December 15, 2020. (Doc. 1, p. 15.) Spears's petition is therefore timely.

(Doc. 12), the petition is denied.[2] Because reasonable jurists would not disagree, a certificate of appealability also is not warranted.

# I.   BACKGROUND

## A. Procedural Background

A state court jury convicted Spears of being a felon in possession of a firearm. (Doc. 13-2, Ex. 1, p. 77.) The state trial court sentenced him to 12 years in prison. (*Id.*, pp. 104-08.) The state appellate court affirmed Spears's conviction and sentence without comment. (Doc. 13-2, Ex. 6.) The state appellate court denied Spears's petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of Appellate Procedure 9.141(d). (Doc. 13-2, Exs. 9 & 10.) The state trial court denied Spears's motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.850. (Doc. 13-2, Ex. 27.) The state appellate court per curiam affirmed the denial. (Doc. 13-2, Ex. 37.)

## B. Factual Background[3]

On the night of April 22, 2013, into the early morning hours of April 23, 2013, Wai Lei was driving his car in Lake Wales, Florida. (Doc. 13-2, Ex. 1, pp. 151-52.) When he stopped at a stop sign, Spears got into the passenger seat of Lei's car, took Lei's Glock 9 mm firearm from the center console, and jumped out of the car. (*Id.*, pp. 152-54.) Lei

---

[2] Spears did not file a reply.

[3] This factual summary is based on the trial transcript.

called the police. (*Id.*, p. 156.) Lei recognized Spears and knew him by the nickname "Poo-Poo." (*Id.*, pp. 152-53.)

While Lei waited for police to arrive, Mildred Smith drove past and noticed Lei's car at the stop sign. (*Id.*, pp. 156, 166.) Smith asked Lei if anything was wrong. (*Id.*, p. 166.) Lei told her that a gun had been taken, and Smith stated that she could get the gun back for him. (*Id.*, p. 169.) Smith knew someone who went by the name Poo-Poo. (*Id.*, pp. 169-70.)

Police arrived a short time later. (*Id.*, p. 156.) When Smith offered to help retrieve the gun, police advised her not to do so. (*Id.*, pp. 201, 206-07.) But Smith tracked down Spears. She stated that she went to an alley where she knew "those people [would] be" and told someone that she needed a gun. (*Id.*, p. 170.) Smith stated that she met up with Spears, who had the gun, got into her car, and offered to sell her the gun. (*Id.*, pp. 171-72.)

Police stopped Smith's car. (*Id.*, p. 173.) Smith saw Spears place the gun in the glove compartment. (*Id.*) Spears complied with officers' directions to get out of the car and get on the ground. (*Id.*, p. 188.) Officer Mongeon recovered the gun from Smith's open glove compartment. (*Id.*, p. 189.) After Lei identified the gun as his, Officer Brown returned it to Lei. (*Id.*, p. 203.) Lei chose Spears's picture from a photopack and identified him as the person who took his gun. (*Id.*, pp. 203-05.)

3

## II.   STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section

4

"defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of

clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to

conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents

7

the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Spears brings claims for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially

higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV.  <u>ANALYSIS</u>

### A. Ground One

Spears asserts that trial counsel was ineffective for failing to "rebuttal and adequately cross-examine" State witnesses Lei and Smith "with their contradictory testimony." (Doc. 1-1, p. 5.) Spears identifies several topics about which he contends counsel inadequately cross-examined these witnesses.

First, Spears contends that Lei testified at trial that Spears was only in his car for seconds, reached into the center console, grabbed the gun, and jumped out, all while the car was stopped. But at deposition, Spears asserts, Lei testified that Spears started searching in his car for anything valuable. And Spears contends that Lei's initial statement to police was that he dropped Spears off at the stop sign, but that Spears reached back in and grabbed his gun and jumped out while the car was still moving.

The state court found that Lei gave consistent testimony at deposition and at trial that the car was not moving when Spears exited. (Doc. 13-2, Ex. 27, p. 39.) Although the

state court did not expressly analyze Spears's assertions that Lei gave differing statements as to whether Spears searched or reached back inside the car, or that Lei at one point said the car was moving, the state court found that counsel was not ineffective for failing to impeach the witnesses, and that Spears did not show prejudice. (*Id.*, pp. 39-40.)[4]

The state court's decision was not unreasonable. Lei testified both at trial and at deposition that the car was stopped. (Doc. 13-2, Ex. 1, pp. 155-56; Ex. 1b, pp. 10-12.) Even if Lei previously made statements inconsistent with his trial testimony that Spears got in the car, quickly took the gun, and exited all while the car was stopped, there is no indication, and Spears does not argue, that Lei ever changed his statement that Spears took the gun. Lei consistently stated that Spears was in possession of Lei's gun and that he took the gun from Lei's vehicle. In the light of Lei's consistent recounting that Spears took the gun from his car, and the State's overall evidence of guilt, Spears fails to show that the state court unreasonably determined that did he not show a reasonable probability of a different outcome had counsel questioned Lei further about this matter.

Next, Spears asserts that Lei gave inconsistent information as to whether he knew who Spears was at the time of the offense. Spears states that Lei testified he did not know

---

[4] The Court presumes the state court ruled on the merits of all aspects of Spears's claim, even if not discussed in the state court's analysis. *See Johnson v. Williams*, 568 U.S. 289 (2013). But if the state court overlooked these portions of Spears's claim, and he is therefore entitled to de novo review, he fails to show that counsel performed deficiently or that he was prejudiced by counsel's performance. The variance between the alleged inconsistencies if pointed out fails to show that the jury would have come to a different conclusion.

Spears's name and found out later from a friend that it was Poo-Poo. Spears asserts that at his deposition, Lei testified that he found out Spears's nickname was Poo-Poo because he had heard people yelling it when Spears was around.

The state court found that Lei testified both at deposition and at trial that the person who took his firearm was "Poo-Poo." (Doc. 13-2, Ex. 27, p. 40.) Thus, the state court found that counsel was not ineffective and that Spears could not show prejudice. (*Id.*)

The state court's decision was not unreasonable. At deposition, when Lei was asked the name by which he knew Spears, Lei stated, "The street call [sic] him Po Po or Poo Poo, whatever. I don't know." (Doc. 13-2, Ex. 1b, p. 6.) Lei testified at deposition that he recognized Poo-Poo because he previously heard people calling out to him and that Poo-Poo jumped in his car and took his firearm. (*Id.*) At trial, Lei testified that he knew the person who jumped in his car by the nickname Poo-Poo, and he identified Spears in the courtroom. (Doc. 13-2, Ex. 1, pp. 152-53.) It was on cross-examination, when counsel asked Lei if he knew the name of the person who took his gun, that Lei answered, "I didn't know, no. I mean, I wasn't sure until I find out from my friend that his name's, you know, Poo-Poo, so . . . ." (Doc. 13-2, Ex. 1, p. 160.)

To the extent that this answer could be considered inconsistent because, as Spears suggests, it could be interpreted as indicating that Lei did not know of Spears's "Poo-Poo" nickname before the incident, any such inconsistency was brought out by counsel. Thus,

12

counsel did call this matter to the jury's attention. Moreover, Lei consistently stated that he knew Spears as Poo-Poo. Spears fails to show that counsel performed deficiently for not addressing the matter further, or that he was prejudiced as a result. Accordingly, Spears does not show that the state court unreasonably denied this portion of his claim.

Spears also addresses inconsistent statements concerning whether Lei and Smith had an agreement about Smith's attempt to retrieve his gun. At trial, Lei testified that he did not have an agreement with Smith about how to get the gun back. (Doc. 13-2, Ex. 1, p. 162.) But Lei testified at his deposition that he gave Smith $80 the next day. (Doc. 13-2, Ex. 1b, pp. 14-17.) Smith testified at trial that they did have an agreement, and that Lei was going to give $80 to whoever brought the gun back, but that she received no money. (Doc. 13-2, Ex. 1, pp. 179-80.)

In denying Spears's claim, the state court stated that it could "find no instance where the agreement was brought up with Mr. Lei during trial." (Doc. 13-2, Ex. 27, p. 40.) But the state court noted that, as Lei testified at deposition that he had an agreement to pay Smith $80, there was no inconsistency between his earlier statement and Smith's trial testimony. (*Id.*) The state court found that counsel did not perform deficiently, and that Spears could not show prejudice. (*Id.*)

Spears does not show entitlement to relief. Spears correctly notes that Lei was asked about an "agreement" at trial and that he stated he had no agreement with Smith about

recovering the gun. (Doc. 13-2, Ex. 1, p. 162.) But, as this question was asked on cross-examination, and counsel also questioned Smith about the agreement on cross-examination, counsel drew out this discrepancy in their statements. (*Id.*, pp. 179-80.) Thus, counsel performed as Spears says he should have to the extent that he used cross-examination to bring out inconsistencies between the witnesses' recollections at trial.

And Spears does not show that counsel was deficient or that he was prejudiced when counsel did not cross-examine Lei about his deposition. Whether there was an agreement between Lei and Smith after the gun was taken does not affect the consistent testimony that Spears took the gun from Lei's car and that he had it with him when he got into Smith's car. Spears does not show that the state court unreasonably denied his claim.[5]

Several specific instances of ineffective assistance of trial counsel alleged in Ground One are procedurally defaulted. Spears did not raise them in his postconviction motion. (Doc. 13-2, Ex. 27, pp. 21-25.) Spears cannot return to state court to present the claims in an untimely, second postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Despite Spears's failure to raise the claims in state court, they are technically exhausted. State-court remedies are exhausted "when they are no longer available, regardless of the reason for their

---

[5] Even assuming that the state court's denial of this argument was based on an unreasonable determination of fact because the state court incorrectly believed that Lei was not questioned about the agreement at trial, and he is therefore entitled to de novo review of the claim, Spears does not show entitlement to relief. He fails to show that counsel performed deficiently or that he suffered resulting prejudice.

unavailability." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (quoting *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006)). But any federal due process claim is procedurally defaulted because it was "not presented to the state courts 'consistent with [the State's] own procedural rules' " requiring the claim to be brought in a postconviction motion. *Ramirez*, 596 U.S. at 378 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Spears does not show that an exception applies to overcome the default. *See id.* Notwithstanding the default, Spears does not show entitlement to relief in any event.[6]

First, Spears contends that counsel should have addressed Smith's inconsistent statements as to whether Smith said she contacted police while Spears was in her vehicle. On cross-examination, counsel asked Smith if she called police when Spears was in her car, and she answered, "No. They spotted me. They followed me." (Doc. 13-2, Ex. 1, p. 176.) Counsel began to ask, "So at no time do you contact –" when Smith corrected herself and said, "Yes, yes, yes. They w[ere] on the phone, and they followed me, yes, sir." (*Id.*, p. 177.) Spears does not show that counsel was ineffective. Counsel addressed this matter on cross-examination, and Spears does not show a reasonable probability that the outcome would have been different had counsel taken further action.

---

[6] Respondent states that Ground One is exhausted "only to the extent" raised in Spears's state court postconviction proceeding, but does not specify which particular instances of ineffective assistance of counsel raised in Ground One are defaulted. Thus, the Court will address the merits. (Doc. 12, p. 14.)

Next, Spears argues that counsel did not adequately emphasize each inconsistency in his closing argument. Spears's claim is vague and conclusory. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim). And counsel did argue that Smith and Lei were unreliable and that their stories made no sense. (Doc. 13-2, Ex. 1, pp. 267-71.) Spears fails to show that counsel was ineffective for not addressing any inconsistencies with more specificity.

These two witnesses saw Spear holding a gun, and the gun was found in the glove compartment of Smith's car after Spears got out of the front passenger seat. Spears's possession of the gun was the only element that the State had to prove beyond a reasonable doubt to obtain a conviction. The two elements of the offense of felon in possession of a firearm, as applicable to this case, are (1) the defendant has been convicted of a felony; and (2) the defendant had in his care, custody, possession, or control, any firearm. § 790.23(1), Fla. Stat. Spears did not contest that he was a convicted felon. (Doc. 13-2, Ex. 1, p. 267.) The jury was free to believe the witnesses' testimony on the question of whether Spears possessed the firearm, even if there were some inconsistencies in their statements about other details. Spears does not show a reasonable probability of a different outcome had counsel more specifically highlighted such inconsistencies during closing argument.

Finally, the Court notes that Spears cites *Giglio v. United States*, 405 U.S. 150 (1972). As Respondent notes, any *Giglio* claim is procedurally defaulted because Spears did not raise it in his state postconviction motion. (Doc. 13-2, Ex. 27, pp. 12-34.) Spears does not show that an exception applies to overcome the default. And as he does not allege facts to show that the State knowingly presented false testimony, he fails to show any violation of *Giglio. See Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (stating that to show a violation of *Giglio*, a petitioner "must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material—i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment" (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006))). Spears is not entitled to relief on Ground One.

## B. Ground Two

Spears argues that the trial court violated his Fourteenth Amendment rights by prohibiting him from asking Smith about her non-compliance with subpoenas to appear for deposition and for trial. When Smith did not appear for trial, the trial court issued a writ of bodily attachment and a police officer picked Smith up and brought her to the courthouse. (Doc. 13-2, Ex. 1, pp. 103-05, 120-21, 125.) According to Spears, the trial court told his counsel in off-the-record comments that were not transcribed that "we will

17

not let the jury know the surrounding circumstances of Mildred Smith being here today." (Doc. 1-1, p. 18.) Spears asserts that this information would have impacted Smith's credibility.

Spears acknowledges that he did not raise this claim of trial court error on direct appeal, stating that he "was not aware of the issue" and that the information is "newly discovered through studying." (Doc. 1, p. 7.) A claim of trial court error should be raised on direct appeal. *Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001). Spears's failure to raise this claim on direct appeal results in the claim's procedural default. *See Ramirez*, 596 U.S. at 378.

Spears does not establish that an exception applies to overcome the default. He does not allege that the cause and prejudice exception applies. To the extent his reference to newly discovered evidence can be interpreted as arguing for the application of the fundamental miscarriage of justice exception, his argument is not persuasive.

Spears has not identified any newly discovered evidence that shows his actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (stating that to show actual innocence, a petitioner must present "new reliable evidence . . . that was not presented at trial"). Smith's failure to comply with subpoenas was known to him at the time of trial. Moreover, Spears does not show how Smith's reluctance to appear proves his factual innocence. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (stating that actual

innocence "means factual innocence, not mere legal insufficiency"); *House v. Bell*, 547 U.S. 518, 538 (2006) (stating that the newly discovered evidence must show "that more likely than not, in light of the new evidence, on reasonable juror would find him guilty beyond a reasonable doubt . . . .").

Because Spears does not overcome the procedural default, Ground Two is barred from federal habeas review.

### C. Ground Three

Spears argues that trial counsel was ineffective for failing to move to suppress evidence of the firearm based on the State's alleged inability to establish a chain of custody for it. Spears states that Officers Brown and Mongeon testified that police recovered a firearm from Smith's vehicle, "but only a property receipt form was placed into discovery and no firearm was ever produced at trial." (Doc. 1-1, p. 26.)

The state court denied Spears's claim. The state court found that even though the firearm was returned to Lei and was not collected by police, direct evidence showed that Spears was in possession of a firearm. (Doc. 13-2, Ex. 27, p. 39.) The state court noted that Lei identified Spears as the person who took the firearm, that Smith stated Spears placed the firearm in the glovebox of her car, that the firearm recovered from Smith's vehicle matched Lei's firearm, and that Officer Brown returned the firearm after Lei identified it. (*Id.*) The state court found that, under these circumstances, a motion to

19

suppress based on Spears's proposed argument about the chain of custody would not have been granted. (*Id.*)

Spears does not show that the state court unreasonably applied *Strickland*. Whether a motion to suppress evidence would have been granted is a question of state evidentiary law. This Court must defer to the state court's determination that a motion to suppress evidence of the firearm based on a chain of custody argument would have been unsuccessful. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))). Thus, Spears cannot show that trial counsel was ineffective for failing to raise a state law claim that the state court determined was without merit. *See id.* at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

Spears does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Three.

## V.   CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Spears must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Spears has not made the requisite showing. Finally, because Spears is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Spears's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Spears and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on December 5, 2023.

*Kathryn Kimball Mizelle*

Kathryn Kimball Mizelle
United States District Judge